UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN BELL | No. 2:25-cr-00076-JAW |

**GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE
LAY TESTIMONY AND ARGUMENT REGARDING DEFENDANT'S
ALLEGED MENTAL HEALTH DIAGNOSES**

The United States of America moves in limine to preclude the defendant, Kevin Bell, from introducing any evidence, making any argument, and conducting any inquiry on cross-examination regarding Bell's alleged mental health diagnoses. For the reasons set forth below, any such evidence, argument, and testimony should be excluded under Rules 401, 402, and 403 of the Federal Rules of Evidence.

**BACKGROUND**

Pursuant to Federal Rule of Criminal Procedure 12.2, a defendant is required to notify the government within the time period provided for filing pretrial motions of their intention to (a) assert a defense of insanity at the time of the offense, or (b) introduce expert evidence relating to a mental disease or defect or any other mental condition that has bearing on the issue of guilt. In the present case, Bell was required to notify the government of his intent to assert an insanity defense or introduce expert evidence related to a mental disease or defect or other mental condition by July 25, 2025. Dkt. Nos. 44, 45. Bell provided no such notice. In response to the government's inquiry, Bell's counsel confirmed on November 19, 2025, that Bell does not plan to proceed on either ground. Bell has not designated any expert witnesses in this matter.

Absent expert testimony, the government is not aware of admissible evidence regarding Bell's alleged mental health diagnoses beyond Bell's statements to government witnesses, which are not hearsay if offered by the government. *See* Fed. R. Evid. 801(d)(2)(A). To the extent other admissible evidence exists, it is in Bell's possession and has not been provided to the government.[1]

The only evidence the government anticipates introducing at trial pursuant to Fed. R. Evid. 801(d)(2)(1) as to Bell's mental health are statements Bell made to Kenneth Tabor at the Morning Glory Diner on April 5, 2025, and Bell's statements to, and conversation with, Chief Jones of the Bridgton Police Department on April 7, 2025. Part of Bell's conversation with Kenneth Tabor was audio recorded, and the entirety of Bell's conversation with Chief Jones was video recorded. The government anticipates seeking to admit both recordings in full.[2]

Bell's statements related to his mental health during his conversations with Tabor and Jones are listed in the government's November 28, 2025 letter to Magistrate Judge Wolf, which is attached hereto as Exhibit A. The government is also submitting proposed transcripts of each recording as Exhibit A and Exhibit B to the government's Trial Brief. Importantly, Bell's statements do not confirm that he has actually been diagnosed with any mental health condition.

---

[1] The government sent one or more letters to defense counsel requesting reciprocal discovery, including a letter dated April 17, 2025.

[2] During a pre-jury-selection conference with Magistrate Judge Wolf on November 26, 2025, Bell's counsel suggested the government was responsible for bringing Bell's mental health into the trial through Bell's statements to Tabor, Jones, and others. To address Bell's concerns, the government subsequently offered to redact Bell's statements regarding his purported mental health diagnoses (including anxiety and autism spectrum disorder), suicidality, and prior hospitalizations/evaluations from the recordings of his encounters with Tabor and Jones. The government also offered to avoid adducing testimony from Tabor of Bell's unrecorded statements regarding the same. However, the parties did not reach any agreement in this regard.

# ARGUMENT

In the absence of admissible evidence regarding Bell's mental health diagnoses, such as a mental health evaluation and expert testimony, Bell should be precluded from introducing any evidence, making any argument, and conducting any inquiry on cross-examination as to Bell's purported mental health diagnoses. Any such evidence, argument, and inquiry should be excluded because it constitutes improper opinion testimony from a lay witness, is irrelevant, would result in unfair prejudice, confusing the issues, and misleading the jury, would be an improper appeal to jury nullification, and because it would constitute inadmissible hearsay.

I.  **Evidence and questioning regarding Bell's purported mental health diagnoses would constitute improper testimony for a lay witness.**

If Bell chooses to testify, he cannot testify about his purported mental health diagnoses or how those purported diagnoses impact his behavior, cognitive functioning (including his ability to act intentionally or willfully), or any other matter that has bearing on the issue of guilt. Such testimony is improper from a lay witness. Federal Rule of Evidence 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Testimony based on scientific knowledge may only be given by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. This includes testimony on psychiatric knowledge. *See, e.g., United States v. Torres-Correa*, 23 F.4th 129, 136 (1st Cir. 2022) (affirming district

3

court's decision to condition cross-examination of cooperating defendant about his schizophrenia diagnosis on the presentation of an expert witness because the defense sought to elicit "medical conclusion" from lay witness who could not provide answers of scientific value); *see also, e.g., United States v. Pierce*, 2024 WL 2930939, at *7 (10th Cir. June 11, 2024) (affirming district court's decision to preclude defendant from testifying that he was "in the beginning stages of dementia" because the defense did not present an expert witness to opine on the defendant's supposed dementia). Pursuant to Rule 701 and the First Circuit's decision in *Torres-Correa*, and because Bell is not qualified as an expert by knowledge, skill, experience, training, or education, and Bell has not designated any expert witnesses in this matter, the Court should preclude Bell from testifying regarding his purported mental health diagnoses or the impact such purported diagnoses have on any matter bearing on the issue of guilt.

For the same reasons, Bell should be precluded from adducing testimony from any lay witnesses on direct or cross examination about Bell's purported mental health diagnoses or the impact such purported diagnoses have on any matter bearing on the issue of guilt. Bell has not designated any witness as an expert in this matter, and this type of testimony falls squarely within the bounds of expert testimony as delineated by Rules 701 and 702.

    **II.**   **Evidence, argument, and inquiry regarding Bell's purported mental health diagnoses would result in unfair prejudice, confusing the issues, and misleading the jury, and would be an improper appeal to jury nullification.**

As an initial matter, Bell's alleged mental health diagnoses are irrelevant and

therefore not admissible.[3] *See* Fed. R. Evid. 402. However, even if the Court were to find that Bell's purported mental health diagnoses have some relevance, any evidence, argument, or inquiry as to such mental health diagnoses, or the impact such purported diagnoses have on any matter bearing on the issue of guilt, should also be excluded under Federal Rule of Evidence 403. Pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid. 403. Any probative value of Bell's purported mental health diagnoses would be substantially outweighed by the danger of unfairly prejudicing the government, confusing the issues, and misleading the jury.

Absent admissible evidence and expert testimony confirming that Bell has been diagnosed with mental health conditions and suffered from those conditions at the time of the charged offense, and expert testimony as to how those diagnoses were reached (e.g. by diagnostic testing, observation, or Bell's self-report), what those diagnoses mean, and how they impact Bell, evidence, argument, and inquiry about Bell's mental health diagnoses would undoubtedly confuse the jury, invite them to speculate, and confuse issues of intent/mental state with questions of the validity or meaning of Bell's self-reported diagnoses. *See, e.g., United States v. Pierce*, 2024 WL 2930939, at *7 (10th Cir. June 11, 2024) ("Without the testimony of a qualified witness discussing how Mr. Pierce's early dementia could affect his ability to recall events, the jury would have

---

[3]  Evidence is relevant if it "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Bell's claims that he has been diagnosed with autism spectrum disorder, anxiety, and/or depression makes no "fact of consequence" in this case more or less probable.

been left to speculate . . . the probative value of [defendant's] proffered testimony regarding his alleged dementia diagnosis would have been substantially outweighed by the danger of confusing the issues or misleading the jury."); *see also United States v. Hamlett*, 2019 WL 3387098, at *16 (D. Conn. July 26, 2019) (refusing to allow defendant to introduce impressions of Department of Children and Families personnel to attack victims' credibility because subjective mental health diagnoses by untrained DCF staff would prejudice and confuse the jury and substantially outweigh any probative value on witness credibility).

Evidence, argument, or inquiry as to Bell's purported mental health diagnoses would also promote, and improperly appeal to, jury nullification. "[A]lthough jurors possess the raw power to set an accused free for any reason or for no reason, their duty is to apply the law as given to them by the court." *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) (internal citation omitted). Jurors may nullify in our system, but "neither the court nor counsel should encourage jurors to exercise this power." *Id.* (internal citation omitted). "A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification[.]" *Sepulveda*, 15 F.3d at 1190. Indeed, trial courts have a duty to prevent nullification "when it is within their authority" to do so. *United States v. Thomas*, 116 F.3d 606, 615-16 (2d Cir. 1997). Absent admissible evidence and expert testimony confirming Bell's mental health diagnoses and the impact such purported diagnoses have on any matter bearing on the issue of guilt, the jury has no proper means of determining what to make of Bell's self-reported mental health diagnoses. In that vacuum, evidence, argument, and inquiry of lay witnesses as to the same have no bearing on whether Bell threatened the President or Bell's mental state at the time he made such threat. In that vacuum, the only realistic

6

purpose of Bell introducing such evidence, argument, or inquiry would be to appeal to the jurors' emotions and sympathy and encourage the jurors to engage in nullification.

For these reasons, the Court should preclude Bell from introducing evidence, making argument, or engaging in inquiry as to Bell's purported mental health diagnoses.

### III. Unless elicited by the government or an applicable exception, testimony regarding Bell's purported mental health diagnoses is improper hearsay.

Any testimony regarding Bell's purported mental health diagnoses is likely also inadmissible hearsay unless such testimony is elicited by the government. Under the Federal Rules of Evidence, out-of-court statements sought to be admitted for the truth of the matter asserted are generally inadmissible as hearsay. *See* Fed. R. Evid. 801 (defining hearsay); Fed. R. Evid. 802 (explaining that hearsay is inadmissible); *United States v. Sabean*, 885 F.3d 27, 41 (1st Cir. 2018) ("It is common ground that a declarant's out-of-court statement is inadmissible if it is offered 'to prove the truth of the matter asserted in the statement." (*quoting* Fed. R. Evid. 801(c))).

Except in very limited circumstances, Bell cannot elicit testimony from witnesses on direct or cross examination regarding out-of-court statements that Bell made to those witnesses to establish the truth of those statements—Bell is not an opposing party to himself. *See* Fed. R. Evid. 801(d)(2)(A). Should Bell choose to testify, he cannot testify about out-of-court statements regarding mental health diagnoses made by medical doctors, psychiatrists, or others to establish the truth of those statements, absent an applicable hearsay exception. *See* Fed. R. Evid. 801, 802; *see also, e.g., United States v. Baker*, 166 Fed. App'x. 566, 568 (2d Cir. 2006) (holding that district court did not abuse its discretion in excluding defendant's testimony about his substance-use diagnosis because it was hearsay if offered to prove that defendant had such a condition); *Dibbern*

7

*v. City of Bakersfield*, 2024 WL 3993196, at *18 (E.D. Cal. Aug. 29, 2024) (noting that in a civil case, "a plaintiff may not testify to hearsay statements from his treating physicians regarding his diagnoses if such testimony is offered for the truth of the matter asserted").

For these reasons, absent an applicable hearsay exception, the Court should preclude Bell from introducing evidence, making argument, or engaging in inquiry as to Bell's purported mental health diagnoses.

## CONCLUSION

For the reasons explained above, Bell should be precluded from introducing any evidence, making any argument, and conducting any inquiry on cross-examination as to his purported mental health diagnoses.

Date: December 2, 2025                                Respectfully submitted,

ANDREW B. BENSON
United States Attorney

BY:   */s/ Nicholas Heimbach*
United States Attorney's Office
100 Middle Street, East Tower, 6th Floor
Portland, Maine 04101
(207) 780-3257
Nicholas.heimbach@usdoj.gov

*/s/ Shira Furman*
United States Attorney's Office
100 Middle Street, East Tower, 6th Floor
Portland, Maine 04101
(207) 780-3257
Shira.furman@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on December 2, 2025, I electronically filed the Government's Motion in Limine with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Caleigh Milton, Esq., and Grainne Dunne, Esq.
Counsel for Defendant

                            ANDREW B. BENSON
                            United States Attorney

BY:   */s/ Nicholas Heimbach*
        United States Attorney's Office
        100 Middle Street
        East Tower, 6th Floor
        Portland, Maine 04101
        (207) 780-3257
        Nicholas.heimbach@usdoj.gov