UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:25-cr-00076-JAW |
| KEVIN BELL | |

**GOVERNMENT'S MOTION IN LIMINE REGARDING BELL'S STATEMENTS, INTRINSIC EVIDENCE, AND RULE 404(b) EVIDENCE**

The United States of America moves in limine for a preliminary determination of admissibility pursuant to Federal Rule of Evidence 104(a). Specifically, the government seeks a ruling in advance of trial concerning the admissibility of evidence of Bell's statements to Kenneth Tabor on April 5, 2025, and Phillip Jones on April 7, 2025, and of Bell's December 2023 warning from the Federal Bureau of Investigation that further threats may result in criminal charges. In support of the motion, the Government states as follows:

**STATEMENT OF THE CASE**

The government adopts herein by reference the factual statement of the case and explanation of anticipated testimony by Investigator Kenneth Tabor of the Maine Office of the State Fire Marshal and Chief Jones of the Bridgton Police Department contained in the government's Trial Brief. Dkt. 100 at 1-6, 15-20. The government seeks to introduce evidence of Bell's prior conduct and encounters with law enforcement in the form of (1) Bell's statements to Investigator Tabor on April 5, 2025, through testimony from Investigator Tabor and the partial audio recording of their encounter, *see* Exhibit A; and (2) Bell's statements to, and conversation with, Chief Jones on April 7, 2025,

1

through Chief Jones's testimony and the video recording of their encounter, *see* Exhibit B.[1] The government seeks to introduce both recordings in evidence in full.

The government also intends to introduce testimony from one or more law enforcement officers that Bell had an encounter with the Bridgton Police Department and the FBI in December 2023. While the government does not intend to introduce evidence of Bell's specific conduct leading to the encounter, it intends to introduce evidence that law enforcement warned Bell that any further threatening statements by Bell may result in criminal charges.

## ARGUMENT

Bell's statements and the December 2023 warning to Bell are admissible as direct evidence of the charged offense, rather than "other acts" evidence. Even if Bell's statements are evidence of prior crimes, wrongs, or acts, they are admissible as "intrinsic" evidence of the charged offense. In any event, the statements and December 2023 warning are admissible pursuant to Federal Rule of Evidence 404(b).

**I.   BELL'S STATEMENTS AND THE DECEMBER 2023 WARNING ARE ADMISSIBLE AS DIRECT EVIDENCE OF THE CHARGED OFFENSE.**

The government will offer Bell's statements to Investigator Tabor and Chief Jones in its case-in-chief against Bell, a party opponent. Bell's statements about his prior conduct and encounters with law enforcement—as distinct from evidence regarding the prior conduct and encounters themselves—are not hearsay and are admissible pursuant to Federal Rule of Evidence 801(d)(2)(A). Bell initiated conversation with Investigator Tabor and chose to make statements about his prior conduct and encounters while stating his threat to the President. Bell chose to make statements about his prior

---

[1]   Government's Exhibit A and Exhibit B are proposed transcripts. Additional corrections or modifications may be made to the transcripts in advance of trial.

2

conduct and encounters to Chief Jones in a conversation about Bell's alleged threat to the President, a conversation that Bell initiated. The relevance of Bell's statements does not depend on Bell having actually committed the prior conduct or having experienced the prior encounters—it is his stated knowledge and recollection that serve as direct evidence of elements of the charged offense. His statements bear directly on whether Bell knowingly and willfully made the threat and whether he made a true threat (that is, whether he made the statement in circumstances that would lead a reasonable person to believe Bell intended to kill or inflict bodily harm upon the President), both elements the government must prove beyond a reasonable doubt. His statements do not constitute evidence of prior crimes, wrongs, or acts under Federal Rule of Evidence 404(b).

Similarly, the government does not intend to introduce evidence of Bell's specific conduct leading to his encounter with the Bridgton Police Department and the FBI in December 2023. Rather, the government seeks only to introduce evidence that law enforcement warned Bell that any further threatening communications by Bell may result in criminal charges. This evidence goes directly to whether Bell made his threat "with the intent to do something the law forbids"—that is, willfully—and does suggest Bell's propensity to commit offenses or bad character. Circumscribed testimony from one or more law enforcement officers regarding the warning to Bell does not constitute evidence of prior crimes, wrongs, or acts under Federal Rule of Evidence 404(b).

## II. BELL'S STATEMENTS TO INVESTIGATOR TABOR AND CHIEF JONES ARE ADMISSIBLE AS "INTRINSIC" EVIDENCE OF THE CHARGED CRIME.

Even if the Court concludes that Bell's statements are evidence of prior crimes, wrongs, or acts, the statements are admissible as "intrinsic" evidence of the charged

crime. Intrinsic evidence "includes prior acts that are part of [the] necessary description of the events leading up to the crime[] or that go to an element of the charged offense." *United States v. Souza,* 749 F.3d 74, 84 (1st Cir. 2014) (*quoting United States v. Fazal-Ur-Raheman-Fazal,* 355 F.3d 40, 50 (1st Cir. 2004)) (internal quotations omitted); *see also United States v. Ramirez-Frechel*, 23 F.4th 69, 76 (1st Cir. 2022) ("Evidence of bad acts that are 'part of the charged crime' is admissible as 'intrinsic' evidence."). Intrinsic evidence is not governed by Rule 404(b) of the Federal Rules of Evidence. *Souza,* 749 F.3d at 84 n.2; *see also United States v. Robles-Alvarez,* 874 F.3d 46, 50 (1st Cir. 2017); *United States v. Gobbi*, 471 F.3d 302, 311 (1st Cir. 2006), *abrogated in part on other grounds by United States v. Nagell,* 911 F.3d 23, 31 n.8 (1st Cir. 2018).

Drawing a line between "intrinsic" and "other acts" evidence requires a fact-specific inquiry and sometimes the same evidence can be admissible as either type. *United States v. Randazzo,* 80 F.3d 626, 630 (1st Cir. 1996) (opining that a "safe course" is to give a "general instruction that bad character is not a permissible inference."). Prior bad acts are generally "reasonably distinct (e.g. in time and place) from the crime charged in the indictment." *Id*. By contrast, intrinsic evidence is "more closely entangled with the events that comprise the charged offense." *Id*. For instance, "[u]ncharged acts [that] illuminate the chronology of events leading to the acts charged in an indictment, or that inform the jury concerning the circumstances surrounding the commission of the charged crime' are generally admissible." *United States v. Pina-Nieves*, 577 F. Supp. 3d 1, 4 (D.P.R. 2021) (*quoting* 1 Weinstein's Evidence Manual § 7.01 (2021)).

Here, Bell made statements about his prior conduct and law enforcement encounters to Investigator Tabor contemporaneous with threatening the President. Those statements are inextricably intertwined with and vital context for Bell's statement

4

regarding the President—"I'll try to shoot him" or "I'll just shoot him." The statements bear directly on what Bell's threat against the President would convey to a recipient and, thus, directly on whether Bell made a true threat. Those statements also bear directly on Bell's understanding of, and intention behind, his statement.

"Where a statement may be ambiguous, the entire context, including the tone used, may assist the jury in determining whether that ambiguous statement was a threat." *United States v. Fulmer,* 108 F.3d 1486, 1495-96 (1st Cir. 1997) (*citing United States v. Malik,* 16 F.3d 45, 48 (2d Cir. 1994); *United States v. Sciolino,* 505 F.2d 586, 588 (2d Cir. 1974)); *cf. Watts,* 394 U.S. at 708 (observing that defendant's conduct could only be interpreted as a method of stating political opposition to the President when "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners . . . ."). Bell's choice to approach an officer and threaten the President while describing his past thoughts, conduct, and encounters with law enforcement is precisely the type of context from which a jury could conclude that Bell's statement was a true threat and that Bell knowingly and willfully uttered that threat.[2]

Similarly, Bell's statements about his prior conduct and encounters with law enforcement to Chief Jones bear directly on Bell's understanding of, and intention behind, his threat against the President. His conversation with Chief Jones, occurring only two days after Bell made the charged threat, constitutes extrinsic commentary relevant to Bell's mental state when he made the threat. *See United States v. Oliver*, 19

---

[2]   Rule 403 of the Federal Rules of Evidence offers no barrier to the admission of Bell's statements. While evidence that a defendant "had engaged in other acts that might show he has a tendency to be violent or vengeful are prejudicial[, t]he question is whether this prejudice is unfair. In a threats prosecution, the general factual context in which the statement was made bears significantly on whether an ambiguous statement could reasonably be read as a threat." *Fulmer,* 108 F.3d at 1502. Given that Bell's threat was inextricably tied to, and communicated with, his statements about his prior conduct and encounters with law enforcement, admitting those statements is not unfairly prejudicial and any prejudice would not substantially outweigh their probative value.

5

F.4th 512, 518 (1st Cir. 2021). In *Oliver,* the First Circuit reviewed a conviction for violating 18 U.S.C. § 876(c) and looked to the defendant's statements in an interview after the threatening letters were received as relevant extrinsic commentary on the letters' ambiguous text. *Id*. The defendant's admission in that interview, the First Circuit held, "supplies evidence from which the jury reasonably could infer the defendant's awareness that the letter would be interpreted by the recipient as a threat of bodily injury." *Id*. (citation omitted).

    So too here. Bell's statements to Chief Jones regarding his prior conduct and law enforcement encounters—along with Bell's varying denials of, and explanations for, his statements to Investigator Tabor—would permit the jury to conclude both that Bell's threat was a true threat and that he knowingly and willfully uttered the threat. Bell's denials to Chief Jones that he threatened the President do not undermine the relevance or admissibility of his other statements. A jury is not required to credit Bell's self-serving statements. *See Oliver,* 19 F.4th at 518 ("As a general matter, a criminal jury is entitled, within wide limits, to doubt a defendant's statements regarding his motives and to credit a plausible alternative motive suggested by the government." (citations omitted)). Bell's statements to Chief Jones corroborate other aspects of Investigator Tabor's anticipated testimony. His statements to Chief Jones also demonstrate Bell's attempts to evade responsibility for threatening the President, including claiming that: Investigator Tabor was twisting his words and "downright framing" him; he was just telling Investigator Tabor about his recent encounters with the police; he was just "being stupid and like testing law enforcement;" and that Chief Jones and/or the Bridgton Police Department had taken him to Maine Med twice "and wanna teach him a lesson now," and have "some other vendettas about past things," including when he made

6

threats against a psychiatrist. Exhibit B at 3-6, 9-11, 18.

At bottom, Bell's own statements—as opposed to the existence of prior bad conduct other than the charged offense—are the focal point of the evidence. *See United States v. Mare,* 668 F.3d 35, 40 (1st Cir. 2012). They support the government's case that Bell knowingly and willfully issued a true threat, rather than any suggestion he acted in conformity with a prior bad act. Indeed, the proper inferences the jury may draw from his statements do not depend on Bell having actually committed the prior conduct or having experience the prior encounters with law enforcement. Bell's statements provided the context in which his threat against the President was a true threat and demonstrate that Bell intended that to be the case.

Because Bell's statements to Investigator Tabor and Chief Jones are "intrinsic" evidence that go directly to the "true threat" and "knowingly and willfully" elements of the charged crime and are statements of a party opponent, they are admissible in the government's case-in-chief.

### III. BELL'S STATEMENTS TO INVESTIGATOR TABOR AND CHIEF JONES AND THE DECEMBER 2023 WARNING ARE ADMISSIBLE UNDER RULE 404(b).

Even if Bell's statements to Investigator Tabor and Chief Jones are evaluated as evidence of other crimes, wrongs, or acts under Federal Rule of Evidence 404(b), they are not being offered as propensity evidence. Rule 404(b) provides that evidence of prior wrongs or bad acts is not admissible to prove conduct in conformity therewith, but it is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed. R. Evid. 404(b). Rule 404(b) is an inclusive rule which allows admission of evidence of other acts relevant to issues at trial. As the First Circuit stated in *United States v. Zeuli,* 725 F.2d 813 (1st Cir. 1984):

7

> The most striking aspect of [Rule 404(b)] is its inclusive rather than exclusionary nature: should the evidence prove relevant in any other way it is admissible, subject only to the rarely invoked limitations of Rule 403. *United States v. Fosher*, 568 F.2d 207, 212 (1st Cir. 1978). Moreover, the test of admissibility is committed primarily to the trial court. *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir. 1975).

*Id*. at 816. Whether to admit evidence under Rule 404(b) is within the District Court's sound discretion. *See, e.g., United States v. Ramey*, 791 F.2d 317, 323 (4th Cir. 1986).

The First Circuit uses a two-part test to determine the admissibility of 404(b) evidence:

> First, the evidence must be specially probative of an issue in the case— such as intent or knowledge—without including bad character or propensity as a necessary link in the inferential chain. The probative value of the evidence must be considered in light of the remoteness in time of the other act and the degree of resemblance to the crime charged. Second, if the proffered evidence has special relevance, it is nonetheless inadmissible if its probative value is substantially outweighed by the danger of, inter alia, unfair prejudice, confusion of the issues, or misleading the jury.

*United States v. Houle*, 237 F.3d 71, 77-78 (1st Cir. 2001) (internal punctuation and citations omitted).

Thus, evidence that a defendant on trial for one crime has been involved in another crime or bad act is inadmissible under Fed. R. Evid. 404(b) if it is offered solely to prove the criminal character of the defendant or his propensity to commit crimes of the sort for which he is on trial. *See United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996); *United States v. Johnston*, 784 F.2d 416, 423 n. 10 (1st Cir. 1986) (*citing Zeuli*, 725 F.2d at 816; *Fosher*, 568 F.2d at 212.

Rule 404(b), however, is not exclusionary. *Fosher*, 568 F.2d at 212. Rather, the rule permits the introduction of uncharged bad act evidence if the evidence has special relevance to an issue in the case, as opposed to solely being proof of defendant's bad

8

character or criminal propensity. *See United States v. Garcia-Sierra*, 994 F.3d 17, 29-30 (1st Cir. 2021); *see also United States v. Spinosa*, 982 F.2d 620, 628 (1st Cir. 1992); *Johnston,* 784 F.2d at 423 n. 10. If the proffered evidence is relevant only for the forbidden propensity inference, then the evidence is inadmissible and the inquiry ends. *Garcia-Sierra*, 994 F.3d at 29. Otherwise, the Court proceeds to conduct a Rule 403 analysis, excluding the proffered evidence only if the probative value of the evidence is substantially outweighed by unfair prejudice. *Id.* "Of course [evidence offered by the Government] is incriminating; but all highly probative evidence is highly prejudicial in this sense. The question is whether the defendant suffers unfair prejudice." *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 581 (1st Cir. 1987); *see also Zeuli*, 725 F.2d 813, 816 (1st Cir. 1984) (explaining that if other-acts evidence is probative of some issue other than character, "it is admissible, subject only to the rarely invoked limitations of Rule 403").

      Bell's statements demonstrate his knowledge and intent in threatening the President, his knowledge and intention that the threat would be received as a threat, his knowledge of the unlawfulness of making a threat, and the absence of any mistake or accident in making the threat. Bell intermingled his threat to the President with unprovoked admissions to Investigator Tabor about avoiding detection through "burner phones" and a "VPN," making social media comments resulting in encounters with the Secret Service and the FBI, hating President Bush but not acting on his thoughts to kill President Bush, his ability to take over a plane and crash it, and with references to the attempted assassination of then-former President Trump at a rally and the shooting of the United Healthcare CEO. From his statements, the jury can rationally infer Bell knew and intended that his threat would be received as just that. The jury can also rationally

9

conclude that a reasonable person would regard Bell's statement as a threat and, thus, that he issued a true threat. Bell's statements to, and conversation with, Chief Jones would similarly permit the jury to infer that Bell knew and intended his statement to be a threat, and knew that it had in fact been received as a threat, given his varying denials of, and explanations for, his statements to Investigator Tabor.

To the extent the government will be required to demonstrate that Bell made his threat "with the intent to do something the law forbids," the fact that he had been warned in December 2023 that making threatening statements may result in criminal charges is directly relevant to Bell's intent and knowledge. Thus, his statements and the December 2023 warning are admissible for the purpose of proving his intent, knowledge, absence of mistake, and lack of accident. *See* Fed. R. Evid. 404(b)(2). These facts are highly probative of the issues at the heart of the case, and this value is not outweighed by any prejudice that may result from their introduction. To the extent the Court is concerned about such prejudice, the government would not object to an appropriate limiting instruction to the jury regarding the limited purposes for which this evidence is being admitted.

## CONCLUSION

For these reasons, the Government respectfully requests that the Court admit the above-referenced evidence.

Date: December 2, 2025

Respectfully submitted,
ANDREW B. BENSON
United States Attorney

BY:   */s/ Nicholas Heimbach*
United States Attorney's Office
100 Middle Street, East Tower, 6th Floor
Portland, Maine 04101
(207) 780-3257
Nicholas.heimbach@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on December 2, 2025, I electronically filed the Government's Motion in Limine with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Caleigh Milton, Esq., and Grainne Dunne, Esq.
Counsel for Defendant

                                        ANDREW B. BENSON
                                        United States Attorney

                BY:    */s/ Nicholas Heimbach*
                                        United States Attorney's Office
                                        100 Middle Street
                                        East Tower, 6th Floor
                                        Portland, Maine 04101
                                        (207) 780-3257
                                        Nicholas.heimbach@usdoj.gov