UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| ) | |
| vs. ) | DOCKET NO. 2:25-cr-00076-JAW |
| ) | |
| ) | |
| ) | |
| KEVIN BELL ) | |

**DEFENDANT'S COMBINED RESPONSE IN OPPOSITION TO MOTION IN LIMINE TO EXCLUDE LAY TESTIMONY AND ARGUMENTS REGARDING DEFENDANT'S ALLEGED MENTAL HEALTH DIAGNOSIS AND MOTION IN LIMINE TO EXCLUDE REFERENCE TO CERTAIN IRRELEVANT EVIDENCE**

WHEREFORE, Defendant Kevin Bell, by and through counsel, respectfully submits this combined Response in Opposition to the Government's Motion *in Limine* to Exclude Lay Testimony and Arguments Regarding Defendant's Alleged Mental Health Diagnosis (ECF No. 99) and Motion *in Limine* to Exclude Reference to Certain Irrelevant Matters. (ECF No. 98). For the reasons set forth below, the defense respectfully requests that the Court deny the Government's Motions.

**INTRODUCTION**

The defense does not wish to introduce evidence of Mr. Bell's mental health, Mr. Bell's personal or familial history, possible punishment, or lack of criminal conviction history at trial. *See* (ECF Nos. 93, 95).[1] It is the Government that is putting this evidence at issue. What the Government's Motions actually seek is to selectively introduce highly prejudicial evidence, while

---

[1] The Government also moved to prohibit defense counsel from making any reference to their personal background or professional experience. (ECF No. 98). As defense counsel has no intention of making such reference, this issue is not addressed.

1

simultaneously preventing the defense from conducting meaningful cross-examination to restore necessary context. Because Mr. Bell's ability to present a complete defense and to effectively confront the witnesses against him are rights guaranteed to him by our Constitution, the Government's attempt to limit the evidentiary record to an incomplete and inaccurate picture that is favorable to its case, must fail.

## ARGUMENT

### I. The Government's Proposal to Introduce One-Sided, Incomplete Evidence Would Violate Mr. Bell's Right to Confrontation and a Fair Trial.

The Due Process Clause protects Mr. Bell's right to present a complete defense and to a fair trial. *Chambers v. Mississippi*, 410 U.S. 284, 290, 294 (1973). The Sixth Amendment to the Constitution guarantees the right of an accused "to be confronted with the witnesses against him." U.S. Const. Amend. VI. The primary mechanism for ensuring the right of confrontation is through cross examination. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) ("Confrontation means more than being allowed to confront the witness physically. Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination."). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id*. at 316. In addition to cross-examination of witnesses, the Sixth Amendment guarantees a defendant's right to confront the creators of testimonial evidence. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311, 329 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 658 (2011).

In *Davis v. Alaska*, the state moved to prohibit the defense from questioning a witness about his juvenile delinquency record, based on a state rule prohibiting disclosure of such information to protect the anonymity of juvenile offenders. *Id*. at 311-12, 318. The Court granted the prosecution request, over the objection of the defense, who cited the need to elicit such information to show

the existence of possible bias and prejudice of the witness. *Id*. at 317. The Supreme Court vacated the defendant's conviction. It held that while the state had an important interest in protecting the anonymity of juvenile offenders, any such interest, despite its importance, could not yield to the vital constitutional right of effective cross-examination of an adverse witness. *Id*. at 320. In *Davis*, the Court held, the State could have protected the privacy of its witness by electing not to call him. *Id*. However, the State could not vindicate its interest through subordination of the defendant's constitutional rights of confrontation. *Id*. As in *Davis*, in this case, the Government cannot, on the one hand, seek to introduce incomplete, one-sided evidence and then on the other attempt to prevent Mr. Bell from addressing it.

      A. *Evidence of Mr. Bell's mental health.*

In this case, the Government seeks to introduce substantial evidence pertaining to Mr. Bell's mental health. *See* (ECF Nos. 100, 101), Exh. C, *Gov't 404(b) Notice*. This includes Mr. Bell's own statements of his mental health diagnosis, prior suicidal statements, and statements pertaining to his past mental health treatment and/or relationship to providers. This also includes Mr. Bell's numerous prior contacts with law enforcement related to his mental health, including welfare checks conducted by law enforcement, incidents that led to involuntary hospitalizations facilitated by law enforcement, and subsequent interactions with law enforcement related to hospitalizations, i.e., that Mr. Bell took Bridgeton Police to small claims court due to lost gloves.

It is the defense's position that all this evidence is inadmissible and should be excluded. *See* Def. Mot's *in Limine* (ECF Nos. 73, 93, 95).[2] During the pre-jury selection conference, the

---

[2] In its Motion the Government asserts it has received no reciprocal discovery from the defense pertaining to Mr. Bell's mental health. (ECF No. 99) at 2, n. 1. Pursuant to Fed. Rule Crim Proc. 16(b), the defense must permit the Government to inspect documents within its possession that *it intends to use at trial*. Fed. Rule Crim. Proc 16(b)(1)(A)(ii) (emphasis added). The defense has no such document it intends to use at trial as it does not seek introduction of this evidence.

parties attempted to reach an agreement regarding the evidence related to Mr. Bell's mental health. No agreement could be reached as the only proposal the Government would agree to was to remove any reference to Mr. Bell's specific diagnosis, his suicidal statements, and that he was subject to involuntary hospitalizations, while still introducing Mr. Bell's contact with mental health providers, including an allegedly threatening communication, and all of Mr. Bell's prior police contact related to the above mental health incidents. In other words, the picture the Government would present to the jury is that Mr. Bell had undefined contacts with mental health workers in which there were threats of violence, and numerous, uncontextualized, past contacts with law enforcement.[3]

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690 (1986). The incomplete picture the Government seeks to present would create a substantial risk that the jury would engage in speculation as to Mr. Bell's mental health, including as to whether he has a diagnosis that they equate with dangerousness. This speculation would only be further confirmed by the Government's eliciting of incomplete evidence as to Mr. Bell's prior law enforcement contacts—stripped of the critical context that all these prior contacts were determined to be mental health matters, with no resulting criminal charges. *See* (ECF No. 100) Exh. B at 5 (Chief Jones: "Ok. Uh, I believe I remember the Sanford Police working with us on that. We took you to Maine Medical Center." Mr. Bell: "Yeah. So am I cleared of that" Chief Jones: "Well, I dunno, *that's a mental health matter*.") (emphasis added).

---

[3] As discussed below, the Government also seeks to preclude the defense from eliciting any testimony as to Mr. Bell's lack of criminal history, leading the jury to incorrectly infer that Mr. Bell was charged or convicted of crimes associated with these incidents.

Where the Government seeks to introduce prejudicial evidence concerning Mr. Bell's prior interactions with mental health providers or law enforcement during mental-health-related incidents, it must permit the defense to present the full context, not just the selective account it wishes the jury to hear. Such a presentation would not merely be incomplete; it would appear to rest on inaccurate inferences—assumptions that the Government now seeks to shield from the very scrutiny the defense is entitled to provide. As such a limited picture would violate Mr. Bell's right to confrontation, right to present a complete defense, and right to a fair trial, the Government's request must be denied.

### i.  PROPOSED RESOLUTION.

The defense proposes resolving this issue by eliminating all references to Mr. Bell's mental health, including any law enforcement contacts flowing from mental health incidents. The defense specifically proposes redacting all information highlighted in orange in the attached Government exhibits. The defense further moves that the Court should preclude the Government from introducing any of the following additional evidence pertaining to Mr. Bell's mental health included in its 404(b) notice to the defense:

- Mr. Bell had been in trouble with law enforcement in the past and was recently detained and taken to the hospital for an involuntary evaluation by the Bridgton Police Department.

- That Mr. Bell took the Bridgton Police Department to small claims court because they lost his gloves during his detainment.

- That Mr. Bell was reported as a missing/endangered person by his psychiatrist out of Nevada or Missouri and was found in Maine.

- Mr. Bell had been "blue papered" in December 2024 to Maine Medical Center in Sanford due to suicidal threats and in February 2025 to Spring Harbor Hospital for a crisis line threat.

- That Mr. Bell had an encounter with law enforcement on about December 14, 2023, regarding a video posted on YouTube about planning to overdose on Zoloft during a flight to cause an emergency landing, and any resulting interactions with law enforcement.

5

If the Court should overrule the objection and allow introduction of this evidence of Mr. Bell's mental health, the defense respectfully submits that pursuant to Rule 106, the defense should be permitted to admit or conduct cross examination as to Mr. Bell's statements as to his specific diagnosis and the nature of his prior contacts with law enforcement. Fed. Rule. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part – or any other statement – that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.").

    B. *Mr. Bell's criminal history.*

The Government seeks to preclude the defense from making any reference, including in cross-examination, to Mr. Bell's lack of criminal history. (ECF No. 98) at 1, 4. It argues this evidence would constitute an inappropriate plea for sympathy and is fraught with the danger of improper jury nullification. *Id*. at 4.

A defendant in a criminal case can offer evidence of a pertinent character trait, such as law-abidingness, to support their defense. Fed. R. Evid. 404. The introduction of such evidence by the defense would, naturally, then permit the prosecution to rebut such a claim with contrary evidence. But that is not the situation we find ourselves in. The defense does not seek to make reference to Mr. Bell's criminal history, but for the fact that the Government is putting it directly at issue. Moreover, as detailed in the Government's 404(b) Notice Letter ((ECF No. 100), Exh. C) and Motion *in Limine* Regarding Bell's Statements, Intrinsic Evidence, and Rule 404(b) Evidence (ECF No. 101), the Government is seeking to introduce substantial evidence of Mr. Bell's prior contact with law enforcement related to mental health incidents, prior alleged threats, and vague statements that Mr. Bell allegedly "hurt" or "threatened" unidentified persons in the past. If introduced without further context, the jurors will no doubt infer that these were charged offenses

for which Mr. Bell was convicted and punished. In addition to being inaccurate, this inference is also highly prejudicial. *United States v. Wright*, 901 F.2d 68, 70 (7th Cir.1990) ("[A] jury is not likely to insist on the Government's satisfying so demanding a standard of proof [as beyond a reasonable doubt] if the defendant is a thoroughly bad sort who even if not clearly guilty of the crime with which he is charged is no doubt guilty of some similar crime or crimes for which he may never have been caught or, if caught, may not have been punished adequately.").

The defense agrees that Mr. Bell's criminal history is not relevant. If the Government is concerned about how this evidence may be viewed by the jury, its remedy is to not put it at issue. However, as with Mr. Bell's mental health, the Government cannot open the door just wide enough to make highly prejudicial and inaccurate insinuations as to Mr. Bell's criminal history and then close the door to any clarifying and correcting rebuttal from the defense.

i. PROPOSED RESOLUTION

The defense proposes resolving this issue by eliminating all references to Mr. Bell's law enforcement contacts and/or alleged prior bad acts. The defense proposes redacting all information highlighted in red in the attached Government exhibits. The defense further proposes the Court prohibits the Government from introducing any of the following evidence included in its 404(b) notice letter:

- The 2003 statement about President Bush and resulting law enforcement contact.
- That Mr. Bell was allegedly tracked by law enforcement.
- The conduct proceeding Mr. Bell's two involuntary hospitalizations and any associated law enforcement contact.
- Any statements made on the internet resulting in law enforcement contact and any resulting law enforcement contact,
- That Mr. Bell wanted to shoot President Bush.

- That Mr. Bell allegedly made statements about "hijacking a commercial aircraft" and shared he had the ability to take over a plane and crash it.

- That Mr. Bell was terminated for allegedly threatening to put bugs in the company's code if he was given security clearances.

- That Mr. Bell allegedly told the waitress at the diner that he "did something bad to someone, they hurt him back, and the defendant wants to hurt them back even worse."

- Mr. Bell allegedly frequently talks about threatening people but never specifically mentions who he threatens, and Susan Johnson tells the defendant not to threaten people.

- That Mr. Bell was initially charged by the State.

If the Court should overrule the objection and allow introduction of this evidence of Mr. Bell's past law enforcement contacts, prior alleged threats, or allegations that he harmed or threatened someone, the defense respectfully submits that pursuant to Rule 106, the defense should be permitted to admit or conduct cross examination as to the fact that Mr. Bell does not, in fact, have any prior convictions or criminal history. Fed. Rule Evid. 106.

    C. *Defendant's possible punishment if convicted.*

The defense agrees that the potential punishment that Mr. Bell faces is irrelevant and that his current incarceration is highly prejudicial and should be excluded. However, again, it is the Government that is putting this issue before the jury.

Per the Government's previously submitted exhibit list, it is seeking introduction into evidence of at least two recordings that make reference to Mr. Bell's arrest related to this case, and his incarceration. For example, the Government is proposing to introduce the recording, and a transcript of the recording of Mr. Bell's transport by federal agents to the Cumberland County Jail. (ECF No. 87) (proposed Exhibit 4 and 4A). The recording begins with an explanation by agents that they are transporting Mr. Bell to the Cumberland County Jail and ends upon their arrival at

the jail. Throughout the conversation there are multiple references to the fact that Mr. Bell may face a term of incarceration. Similarly, in Government's Proposed Exhibit 3 and 3A, the interview and transcript of the interview with Chief Jones, there are multiple references to the possibility of Mr. Bell going to jail.

### i. PROPOSED RESOLUTION.

The defense proposes resolving this issue by eliminating all reference to possible punishments. The defense proposes making the redactions to Government's Exhibit 3 and 3A, highlighted in yellow. It also proposes eliminating Government Exhibit 4 and 4A in their entirety. Finally, the defense requests the Court prohibit the Government from making any reference or eliciting any testimony as to Mr. Bell being arrested, taken to jail, placed on bail, or being incarcerated.

However, should the Government be permitted to introduce evidence of Mr. Bell's arrest, state charges, or incarceration, Mr. Bell must be allowed to clarify, contextualize or rebut that information.

### D. *Mr. Bell's personal or family history, and employment history.*

The defense agrees that Mr. Bell's personal or family history and employment history is not relevant and should be inadmissible at trial. However, again, the Government has put these subjects at issue.

In this case, the Government elected to include Mr. Bell's former name in the indictment, despite the fact it was not his name at the time of the incident nor at the time it sought an indictment. *See* (ECF No. 37). The Government has also signaled its intent to introduce evidence that Mr. Bell previously lived in another state and was fired from his job for threatening to put bugs in the code and leak information if he were to ever obtain a security clearance. (ECF No. 100), at Exh. C.

      i.      PROPOSED RESOLUTION.

The defense respectfully submits Mr. Bell's name change, the fact he lived in another state and was reported missing, and that he was terminated from his employment should all be excluded. The defense proposes the redactions in the attached exhibits highlighted in blue. Further, as explained in the Defense Motion *in Limine* Regarding Other Irrelevant Evidence (ECF No. 95), the defense also moves to prohibit the Government from eliciting any testimony as to Mr. Bell's former name.

However, should the Government be permitted to introduce evidence of Mr. Bell's employment, name change, or other personal history, Mr. Bell must be allowed to clarify, contextualize or rebut that information.

WHEREFORE, for the foregoing reasons, Mr. Bell respectfully requests that this Honorable Court deny the Government's Motions *in Limine* to Exclude Lay Testimony and Arguments Regarding Defendant's Alleged Mental Health Diagnosis (ECF No. 99) and Motion *in Limine* to Exclude Reference to Certain Irrelevant Matters (ECF No. 98).

Dated December 9, 2025, in Portland, Maine.

                              */s/ Grainne Dunne*
                              Grainne Dunne
                              Attorney for Defendant
                              Assistant Federal Defender
                              P.O. Box 595
                              Portland, Me 04112-0595
                              207-553-7070
                              FAX: 553-7017
                              grainne_dunne@fd.org

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CERTIFICATE OF SERVICE

I, Grainne Dunne, attorney for Kevin Bell, hereby certify that I have served electronically, a copy of the within **DEFENDANT'S COMBINED RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE LAY TESTIMONY AND ARGUMENTS REGARDING DEFENDANT'S ALLEGED MENTAL HEALTH DIAGNOSIS AND MOTION IN LIMINE TO EXCLUDE REFERENCE TO CERTAIN IRRELEVANT EVIDENCE** upon Assistant United States Attorney Nicholas Heimbach, Esq., and Shira Furman, Esq., via the ECF system.

Dated: December 9, 2025         */s/ Grainne Dunne*
                                 Grainne Dunne