UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

______________________________

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION |
| Plaintiff | Docket No: 2:25-cr-00076-JAW |
| -versus- | JURY TRIAL |
| | VOLUME I OF I |
| KEVIN BELL, | |
| Defendant | |

______________________________

Transcript of Proceedings

Pursuant to notice, the above-entitled matter came on for **Jury Trial** held before **THE HONORABLE JOHN A. WOODCOCK, JR.**, United States District Court Judge, in the United States District Court, Edward T. Gignoux Courthouse, 156 Federal Street, Portland, Maine, on the 16th day of December, 2025 at 8:40 a.m. as follows:

Appearances:

For the Government: Nicholas S. Heimbach, Esquire
Shira Furman, Esquire

For the Defendant: Caleigh Milton, Esquire
Grainne Dunne, Esquire

Tammy L. Martell, RMR, CRR
Official Court Reporter

(Prepared from manual stenography and computer-aided transcription)

(Open court. Defendant present.)

THE COURT: All right, we're here in the matter of the United States versus Kevin Bell, which is 2:25-cr-76-JAW.

Would counsel please enter their appearances.

MR. HEIMBACH: Good morning, Your Honor, Nicholas Heimbach for the United States, joined by Shira Furman, AUSA, as well as Kristina Angell, special agent from the FBI.

THE COURT: Good morning.

MS. DUNNE: Good morning, Your Honor, Grainne Dunne and Attorney Caleigh Milton on behalf of Mr. Bell.

THE COURT: Good morning.

THE DEFENDANT: Good morning.

THE COURT: Good morning, Mr. Bell.

THE DEFENDANT: Good morning.

THE COURT: We're going to start, Mr. Bell, under the Supreme Court rules we have to clarify whether the Government has made any formal plea offers to you, and, therefore, to comply with what the Supreme Court says I'm going to be asking the prosecutor and your own lawyer whether they've made any formal plea offers to you; do you understand?

THE DEFENDANT: Yes.

THE COURT: Mr. Heimbach?

MR. HEIMBACH: Your Honor, the Government has not extended any formal plea offers in this case. Attorney Milton and I did have discussions at different points, but no formal

plea offers have been extended and/or rejected by the defendant.

THE COURT: All right. Thank you.

Is that correct, attorney -- who should I be referring to, Milton?

MS. MILTON: That is correct, Your Honor.

THE COURT: Mr. Bell, is -- is that correct you've received no formal plea offers from the Government?

THE DEFENDANT: Yeah, that's correct.

THE COURT: Okay. Thank you, sir, you may be seated.

Are we ready for the jury?

MR. HEIMBACH: Yes, Your Honor.

THE COURT: Ready for the jury?

MS. MILTON: Yes, Your Honor.

THE COURT: Could you bring the jury in, please.

I should note for the record that we have invoked the rule of sequestration, correct?

MR. HEIMBACH: Yes, Your Honor. I will inform the Court, just for the Court's awareness, because of the current state of the courthouse the witnesses are located in the room off the back of the courtroom. Attorney Dunne and I tested with Attorney Dunne in that room and myself speaking into various microphones and the words that were being said in the courtroom could not be heard in that room.

THE COURT: Very good, thank you very much.

THE CLERK: All rise. Jury entering.

(Jury entered. Time noted: 8:44 a.m.)

THE COURT: Remain standing. Remain standing. You may be seated.

Good morning, ladies and gentlemen.

JURY: Good morning.

THE COURT: My name is John Woodcock and I'm the judge who will be presiding over this case. I would like to first thank you for your willingness to participate in this great civic duty. One of the reasons I ask you to remain standing is that it shows respect. It shows respect for the Court, but it also shows respect for the parties and for each other in this process. So I'm not telling you to remain standing to exercise some kind of authority but to ask you to show the same respect for this process that the lawyers and I will show it.

At this point I'm going to ask the clerk to swear in the jury.

THE CLERK: Please stand and raise your right hands.

Do each of you solemnly swear that you will well and truly try the issue between the parties at the bar according to the laws and the evidence given to you, so help you God?

JURY: I do.

THE CLERK: Please be seated.

THE COURT: I'm going to ask counsel to introduce themselves and the individuals at their counsel table.

MR. HEIMBACH: Thank you, Your Honor. Good morning, members of the jury, again my name is Nicholas Heimbach. I am an Assistant United States Attorney. I'm joined by AUSA Shira Furman as well at counsel table and seated to her left is Kristina Angell, a special agent with the FBI.

THE COURT: Thank you. And will the defense counsel please introduce themselves.

MS. MILTON: Yes, Your Honor. Good morning. I'm Caleigh Milton, I am an assistant federal defender. This is my coworker Grainne Dunne, she is also an assistant federal defender. We have here Mr. Kevin Bell, the defendant in the case. And then this is Fred Kerrigan, he is our paralegal in our office.

THE COURT: Thank you very much.

Ladies and gentlemen, what we're going to do is I'm going to give you some preliminary instructions, and after I'm finished with those instructions you'll hear the opening statements of counsel. These instructions are preliminary only and at the end of the trial I'll give you some final instructions. Those instructions will be in writing and you'll be able to take the instructions into the jury room to review them, if you need to do so. So what I am telling you now is not a memory test, it's a general outline of what you can expect the law will provide, and also give you some guidance as to how the trial will proceed.

Ladies and gentlemen, you are now the jury in this case, and I want to take a few moments to tell you something about your duties as jurors and to give you some instructions. At the end of trial we'll give you more detailed instructions. Those instructions will control your deliberations.

Duties as jurors. It is your duty to find the facts from all the evidence submitted in this case. You and you alone are the judges of the facts. To those facts you must apply the law as I give it to you. The determination of the law is my duty as the presiding judge in this court.

Can you find out what's going on up there?

We're going to see if we can stop the drumming.

It is your duty to apply the law exactly as I give it to you, whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathies. Or biases, including unconscious biases. Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or attention. Like conscious bias, unconscious bias can affect how we evaluate information and make decisions.

You must perform these duties fairly and impartially. You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or other economic circumstances. That means

you must decide the law -- the case solely on the evidence before you and according to the law. You will recall you just gave an oath promising to do so.

In following my instructions, you must follow all of the instructions and not single out some instructions and ignore others. They are all equally important. And you must not read into these instructions, or into anything I say or do during the course of this trial, any suggestion as to what verdict you should return. That is a matter entirely for you to decide.

Introduction to the case. This criminal case has been brought by the United States Government. I'll sometimes refer to the Government as the prosecution. The Government is represented, as you've heard, in this trial by Assistant United States Attorneys Nicholas S. Heimbach and Shira Furman. This case has been brought against Kevin Bell. I will sometimes refer to him as the defendant. He is represented by his lawyers, Grainne Dunne and Caleigh Milton.

The Government charges Mr. Bell with violating federal law. Specifically, he is charged with making a threat against the president of the United States. The charge against Mr. Bell is contained in an indictment. The indictment is simply a description of the charge against Mr. Bell, it is not evidence of anything. Mr. Bell has pleaded not guilty to the charge and he denies committing the crime.

Presumption of innocence. It is a cardinal principle of

our system of justice that every person accused of a crime is presumed to be innocent unless and until guilt is established beyond a reasonable doubt. The presumption is not a mere formality, it is a matter of the most important substance.

Mr. Bell has the benefit of that presumption throughout the trial, and you are not to convict him unless all of you unanimously find that the Government has proven his guilt beyond a reasonable doubt.

The presumption of innocence until proven guilty beyond a reasonable doubt means that the burden of proof is always on the Government to satisfy you that Mr. Bell is guilty of the crime with which he is charged beyond a reasonable doubt.

Preliminary statement of the elements of the crime. In order to help you follow the evidence, I'll now give you a brief summary of the elements of the crime charged. To make its case the Government must prove each of these elements beyond reasonable doubt.

Count 1, threat against the president. The Government charges Mr. Bell in Count 1 of the indictment with knowing -- knowingly and willfully making a threat to take the life of or to inflict bodily harm upon the president of the United States in violation of Section 871(a) of Title 18 of the United States Code. It is against federal law for anyone to knowingly and willfully make a threat to injure or kill the president of the United States.

In order for you to find Mr. Bell guilty of this crime, the Government must prove each of the following four elements beyond a reasonable doubt:

First, that Mr. Bell knowingly and willfully made the alleged statement; second, that Mr. Bell made a statement containing a true threat to kill or injure President Trump; third, that Mr. Bell intended that the statement be taken as a true threat against President Trump; and fourth, that under the circumstances in which the statement was made a reasonable person would foresee that it would be understood by persons hearing it as a true threat to kill or injure President Trump.

Section 871 is constitutional. The nation has a valid even overwhelming interest in protecting the safety of its chief executive and in allowing its chief executive to perform his duties without interference from threats of physical violence. At the same time free speech in this country is protected by the First Amendment.

This country has a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that may well include vehement, caustic, and sometimes unpleasantly sharp attacks on the government and public officials including the president. Even so, the First Amendment's protection of speech and expression does not extend to threats of physical violence.

To distinguish protected speech from criminalized speech

that is not protected by the First Amendment, the law has developed the concept of true threat. Under the law, a true threat is a statement where the speaker means to communicate a serious expression of an intent to kill or injure President Trump. A true threat is a serious threat, not idle talk, a careless remark, or something said jokingly.

One of the issues you'll be asked to decide is whether Mr. Bell's statement was a true threat. The Government must prove beyond a reasonable doubt that Mr. Bell knowingly made a statement in such a way and under such circumstances that a reasonable person would foresee that the statement would be interpreted by persons hearing it as a serious expression of an intention to kill or inflict bodily harm upon the president.

The Government does not have to prove that Mr. Bell intended to carry out the threat. The Government must prove that Mr. Bell knowingly and willfully made a true threat. To prove Mr. Bell acted knowingly, the Government must prove beyond a reasonable doubt that Mr. Bell acted voluntarily and intentionally, not because of a mistake or accident.

To prove Mr. Bell acted willfully, the Government must prove beyond a reasonable doubt that Mr. Bell acted voluntarily and intention -- intelligently with the specific intent to do something the law forbids. That is, with the bad purpose to disobey or disregard the law.

While Mr. Bell must have acted with the intent to do

something the law forbids before he acted willfully, Mr. Bell need not have been aware of the specific law or rule that his conduct may be violating.

You should understand that what I have given you is only a preliminary outline, at the end of trial I'll give you final instructions on these matters. If there is any difference between what I've just told you and what I tell you in the instructions at the end of trial, the instructions given at the end of trial will govern.

Evidence, objections, rulings, and bench conferences. I have mentioned the word evidence. Evidence includes the testimony of witnesses, documents, and other things received as exhibits. There are rules of evidence that control what can be received into evidence, and when a party asks a question or offers an exhibit in evidence and the party on the other side thinks it's not permitted under the rules of evidence, that party may object. This simply means the objecting party is requesting that I make a decision on a particular rule of evidence. Then it may be necessary for me to talk with the parties outside your hearing. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and legal error. We will, of course, do whatever we can to keep to a minimum the number and length of these conferences.

Certain things are not evidence and I will list some of those things that are not evidence for you. First, statements, arguments, questions, and comments by the Government's lawyers and Mr. Bell's lawyers are not evidence. Lawyers are not witnesses and they're not under oath and they're not presenting evidence to you.

Objections are not evidence. Lawyers have a duty to their clients to object when they believe something is improper under the rules of evidence. You should not be influenced by the objection. If I sustain an objection, you must ignore the question or exhibit and must not try and guess what the answer might have been or what the exhibit might have contained. If I overrule the objection, the evidence will be admitted, but do not give it special attention because there has been an objection.

Three, any evidence that I strike from the record or tell you to disregard is not evidence and must not be considered.

Four, anything you see or hear about the case outside the courtroom is not evidence unless I specifically tell you otherwise during the trial.

Five, the indictment is not evidence.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only, that is you can use it only for a particular purpose and not for any other purpose. I will tell you when that happens and instruct you with regard to

the purposes for which the item can and cannot be received.

Finally, some of you may have heard the terms direct evidence and circumstantial evidence. Direct evidence is testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is indirect evidence. That is, proof of one or more facts from which one can find or infer another fact. You may consider both direct and circumstantial evidence. The law permits you to give equal weight to both, but it is for you to decide how much weight to give any evidence.

Credibility of witnesses. In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe everything a witness says or only part of it or none of it. In deciding what to believe you may consider a number of factors including the following:

One, the witness's ability to see or hear or know the things to which the witness testifies; two, the quality of the witness's memory; three, the witness's manner while testifying; four, whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice; five, whether the witness is contradicted by anything the witness said or wrote before trial or any other evidence; and six, how reasonable the witness's testimony is when considered in light of other events which you believe to be true.

In evaluating a witness's credibility, as I indicated before, you must avoid bias, conscious or unconscious, based on a witness's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, disability, or economic circumstances in your determination of credibility.

Conduct of the jury. To ensure fairness, you as jurors must obey the following rules which I will outline for you. These rules are grounded on the premise that your verdict in this case must be both based solely on the evidence that is admitted at trial and on the law as I give it to you.

First, you must not consider any information that is not properly before you. Thus, for example, though most people have access to a computer and to the internet and you may be tempted to consult with the internet, with dictionaries or other reference materials, you must not use those resources to do independent research on your own in this case. To do so would violate your oath as jurors in which you will recall you promised to base your verdict solely on the evidence and on the law.

Second, do not talk among yourselves about this case or about anyone involved with it until the end of the case when you go to the jury room to decide your verdict.

Third, do not talk with anyone else about this case or about anyone involved with it until the trial has ended and you have been discharged as jurors. Anyone else includes members

of your family and your friends. You may tell them that you're a juror, but do not tell them anything about the case until you've been discharged by me.

Fourth, do not let anyone talk to you about the case or about anyone involved with it. If someone should try and talk to you about the case, report it to me immediately through the jury officer.

Fifth, during the trial do not talk or speak to any of the parties, lawyers, or witnesses involved in the case. You should not even pass the time of day with them. It's important not only that you do justice in this case but also you give the appearance of doing justice. If a person from one side of the case sees you talking to a person from the other side, even if it's merely to pass the time of day, an unwarranted and unnecessary suspicion about your fairness may arise. If any lawyer, party, or witness does not speak to you outside the courtroom, it's not because they're being rude, it's because they're not supposed to talk to you.

Six, do not read any news stories or articles about the case or about anyone involved with it or listen to any radio, television, or online reports about the case or about anyone involved with it.

Seven, do not discuss the case or anyone involved with it, or your status as a juror, on any social media or look up any of the participants on social media.

Eighth, if you need to communicate with me, simply give a signed note to the jury officer to give to me.

And ninth, do not make up your mind about what the verdict should be until after all the evidence has been received and you've gone to the jury room to decide the case, you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Note taking. I am going to permit you to take notes in this case, and the jury officer has distributed pens and binders for your use; however, I want to give you a couple of warnings about notes. Do not allow your note taking to distract you from listening carefully to the testimony as it is being presented. If you prefer not to take notes but simply to listen, please feel free to do so. Please remember that not everything you write down necessarily is what was said here in the courtroom. Thus, when you return to the jury room to discuss the case do not assume simply because something appears in someone's notes that it necessarily took place here in court. Instead, it is your collective memory that must control as you deliberate upon the verdict.

Please take your notebook to the jury room at every recess. Do not leave it in the courtroom. I will have the jury officer collect the notebooks at the end of the day and place them in the vault. They will be returned to you each morning and when the case is over your notes will be destroyed.

These steps are in line with my earlier instruction that it is important you not discuss the case with anyone or permit anyone to discuss it with you.

Outline of the trial. The first step in the trial will be the opening statements. The Government's attorney in his or her opening statement will tell you about the evidence that he intends to put before you so that you will have an idea of the Government's case. Just as the indictment is not evidence, the opening statement is not evidence. Its purpose is only to help you understand what the evidence will be and what the Government will try and prove. After the prosecution's opening statements, Mr. Bell's counsel may also make an opening statement. Remember, at this point in the trial no evidence has been offered by either side.

Next the prosecutors will offer evidence that they say will support the charge against Mr. Bell. The Government's evidence in this case will consist of the testimony of witnesses and may include documents and other exhibits, and after the Government's evidence Attorneys Milton and Dunne may present evidence on behalf of Mr. Bell but they're not required to do so.

I remind you that Mr. Bell is presumed innocent and the Government has the burden of proving him guilty beyond a reasonable doubt. Mr. Bell does not have to prove his innocence.

After you've heard all the evidence, the Government's lawyer and Mr. Bell's lawyer will be given time for their final arguments. I told you that the opening statements by the Government's lawyers and by Mr. Bell's lawyers are not evidence, the same applies to the closing arguments. They are not evidence either.

In their closing arguments, the Government's lawyer and Mr. Bell's lawyer will attempt to summarize and help you understand the evidence that was presented during the trial.

The final bit -- part of this trial occurs when I instruct you on the rules of law that you are to use in reaching your verdict. After hearing my instructions, you will leave the courtroom together to make your decision. Your deliberations will be secret. You will never have to explain your verdict to anyone.

At this point that concludes my preliminary instructions.

Mr. Heimbach, I understand you will be delivering the opening statement on the part of the Government, would you like to proceed?

MR. HEIMBACH: Your Honor, may we be heard briefly at sidebar?

THE COURT: Sure.

MR. HEIMBACH: Thank you.

(Sidebar.)

THE COURT: What's up?

MR. HEIMBACH: Your Honor, I know this is highly unusual but the Government would request if we may have a few minutes. Something urgent has -- something urgent has come up that we need to discuss with our superiors regarding this trial that's relevant to this trial. If we may have 20 minutes very briefly to speak with them, we would appreciate it.

THE COURT: 20 minutes is not very briefly, but --

MR. HEIMBACH: I was asked to request half an hour, Judge, so I apologize.

THE COURT: All right, that's fine.

MR. HEIMBACH: Thank you, Judge.

MS. FURMAN: Thank you, Your Honor.

THE COURT: Thank you.

(Open court.)

THE COURT: Well, ladies and gentlemen, I guess you need a little time by yourselves. It's a little unusual, but I have been asked to delay the opening statements for a little while. Don't speculate about why. Don't talk about the case, you don't know anything about it. You can talk about the Bruins or the Red Sox or the Patriots or whatever you want to talk about, but don't talk about the case, and I'll see you back here. They've asked for about 20 minutes and I'll get you back here as soon as I can. Thank you.

THE CLERK: All rise. Jury exiting.

(Jury exited. Time noted: 9:16 a.m.)

THE COURT: Now, Mr. Heimbach, I've been doing this for a long time, I've seen many trials, this is a first.

MR. HEIMBACH: Your Honor, I hope it will be a last, but --

THE COURT: All right, thank you.

MR. HEIMBACH: Thank you, Judge.

(A recess was taken from 9:16 a.m. to 9:58 a.m.)

THE COURT: Mr. Heimbach.

MR. HEIMBACH: Yes, Your Honor. With apologies to the Court and defense counsel, the Government respectfully requests leave of the Court to dismiss this matter. I understand that the jury has been sworn and jeopardy has attached. We understand the dismissal will be with prejudice.

I will tell the Court out of candor, Your Honor, that this does relate to information we've learned this morning that goes to a witness's credibility. AUSA Furman and I discussed the *Giglio* inquiries at our office in some depth in chambers yesterday, so we just wanted to be candid with the Court and defense counsel that we have received additional information this morning. It is being reviewed in our office and management will be deciding on appropriate next steps.

THE COURT: All right. I take it the defense will have no objection?

MS. MILTON: That's correct, Your Honor.

THE COURT: All right. Why don't we bring the jury

in, you can move to dismiss, I'll grant the motion to dismiss with prejudice, I will discharge the defendant -- I will excuse the jury, and then discharge the defendant.

MR. HEIMBACH: Yes, Your Honor, thank you.

THE COURT: Would you bring the jury in, please.

THE CLERK: All rise. Jury entering.

(Jury entered. Time noted: 10:02 a.m.)

THE COURT: You may be seated.

Mr. Heimbach.

MR. HEIMBACH: Your Honor, with respect the Government requests leave to dismiss the indictment in this matter with apologies to the defense, the Court, and the jury for the taking of their time. We request that the Court grant the motion and dismiss the indictment in this matter with thanks to the jury for its service.

THE COURT: Is there any objection?

MS. MILTON: No objection.

THE COURT: The motion to dismiss the indictment with prejudice is hereby granted. The jury is discharged. You may return to the jury room and I'll be up to talk to you shortly.

THE CLERK: All rise. Jury exiting.

(Jury exited. Time noted: 10:03 a.m.)

THE COURT: You can be seated. Just a word, Mr. Heimbach. This is the second time in two weeks that a -- that the Government has moved to dismiss an indictment after a jury

has been selected. I'm not happy. It seems to me that if there's *Giglio* information that should have been given over to the defense, the Government should have learned that information by due diligence prior to the time that the jury is selected, prior to the time the jury is seated and sworn, and I'm not at all happy with the way the Government has acted over the last two weeks.

This is the second trial in which at the -- the other one was at the very eve of trial where the jury had been selected, I had gone through preliminary and final instructions, I had ruled on motions in limine, as I did in this case. It's an enormous waste of time and I'm not at all happy with the United States Attorney's Office, and I'd ask you to convey that to the United States Attorney and let him know the Court's displeasure.

MR. HEIMBACH: I will absolutely do so, Your Honor.

THE COURT: I would like to thank defense counsel for your efforts in this case. As always, you've done an outstanding job on behalf of your client.

The defendant is hereby discharged.

Court will stand in recess.

THE CLERK: All rise.

(Time noted: 10:04 a.m.)

**C E R T I F I C A T I O N**

I, Tammy L. Martell, Registered Merit Reporter, Certified Realtime Reporter, and Official Court Reporter for the United States District Court, District of Maine, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Dated: January 7, 2026

/s/ Tammy L. Martell

Official Court Reporter